Orba PRENTICE *v.* L. C. COX

76-220                                          547 S.W. 2d 744

Opinion delivered January 31, 1977
(Division II)

*Blankenship & Jarboe,* for appellant.

*William B. Howard* and *Ponder & Lingo,* for appellee.

ELSIJANE T. ROY, Justice. In 1973, appellee L. C. Cox,[1] an 80 year old man, had for about three years been living with one of his daughters, appellant Orba Prentice, and two of her children at her home in Illinois. Some years before

[1] On January 10, 1977, a stipulation was filed with this Court that L. C. Cox had died and the parties agreed the appeal should stand revived in the name of Emma Snider, executrix.

1973 both of appellee's legs had been amputated above the knees because of diabetes. He required regular medication and was confined to a wheel chair.

Appellee told appellant he would deed her 40 acres of his land in Arkansas if appellant would return to live on the farm and care for him during his life. Appellant was reluctant to accept the proposal, but after a few months she told her father she would agree to live on the farm and care for him. He was so pleased he told her he would "just give her 80 acres instead of 40 acres."

In line with the agreement, in October, 1973, appellee executed and delivered to appellant a deed conveying 80 acres of land with the recited consideration of "One Dollar and love and affection I bear for my daughter." After selling her home in Illinois, appellant, her youngest children and appellee moved to Arkansas in February, 1974. Thereafter misunderstandings arose between the parties and this action was filed by appellee to set aside the deed for failure of consideration.

The court in its findings, after citing cases, stated:

... [T]he plaintiff must establish *only by a preponderance of the evidence* the failure of the consideration to prevail. * * * (Italics supplied.)

* * * It will be the express holding of this court that the plaintiff must prove its case by a preponderance of the evidence. * * *

The court held appellee had not received that for which he bargained and the deed should be cancelled and title revested in appellee. This appeal is brought from the court's decree.

Since our cases have not always been clear on the weight of evidence necessary to justify cancellation of a deed, a mistaken interpretation of the law is understandable. However, we find controlling under the facts here the principles enunciated in *Bryant* v. *Bryant,* 239 Ark. 61, 387 S.W. 2d 322 (1965), and *Baker, Guardian* v. *Helms,* 244 Ark. 29, 423 S.W. 2d 540 (1968). In *Baker* we pointed out that:

A mere preponderance of the evidence is not sufficient to establish an alleged unperformed agreement on the part of the grantee in a deed to support the grantor where that consideration is not expressed in the deed. *Viesey* v. *Wooten*, 220 Ark. 962, 251 S.W. 2d 593; *Hammett* v. *Cannon*, 226 Ark. 300, 289 S.W. 2d 683. Evidence to engraft upon a deed a consideration other than that expressed therein must be clear, cogent, and convincing. *May* v. *Alsobrook*, 221 Ark. 293, 253 S.W. 2d 29. Evidence to justify the cancellation in equity of a deed properly executed and acknowledged must also be something more than a mere preponderance. It must be clear, strong and conclusive, or clear, cogent and convincing, or clear, unequivocal and decisive. (Citing cases.)

In *Bryant* we reversed the chancellor's cancellation of the deed for failure of consideration stating *inter alia* ". . . the testimony falls far short of establishing by clear, cogent and convincing testimony that the $3,500 was to be used for support of the mother. . . . "

Appellee's testimony seemed to indicate that his main causes of concern were responsibility for repairs on the house, being taken to a doctor against his wishes and later being left several days at his daughter Ellen's house when he wanted to come home. However, appellee testified that he and appellant would still be living together if she could handle her two sons as she was mighty good about taking him to the doctor and things like that. He also testified he could have taken care of the sons if appellant hadn't stolen his gun.

After appellant came to Arkansas she and appellee disagreed as to the financial responsibility for making necessary repairs on the house in which they were living. When she asked appellee to help with the repairs he became so violent and threatening that she consulted with his personal physician. She advised her father the physician recommended she take him to a nursing home at Jonesboro for an examination, but her father still did not want to go. However, she thought it was imperative under the circumstances, and it was

necessary for her sons to hold his hands while she disarmed him. Her testimony was that after they returned home from Jonesboro the parties lived together happily and uneventfully for about three months until she received the notice to vacate the premises.

After the dispute about repairs one of appellant's sons did the plumbing work on the house, screen doors were repaired and a new porch and a ramp for appellee's wheel chair were built, with all materials being paid for by appellant or her sons. At the time of trial appellant testified the only money she had was $100 which had been given to her by her sons since all of her own funds had been expended on the costs of the move, materials for repairs, groceries, etc. Both parties agreed that appellee was to receive the income from the property as long as he lived.

Appellant testified as to how she had taken care of the house and her father in Arkansas the same way she had in Illinois for three years. She did the cooking, house cleaning, washing, ironing, bought the groceries, and took care of her father, including taking him to the doctor and seeing that he received his medication. She had no indication of dissatisfaction until she received the letter demanding that she move. She stated she loved her father and would live there and take care of him as agreed if he would let her.

Appellant's oldest son, Vern Prentice, Jr., testified he came to the farm in late September of 1974 to help his younger brothers fix up the house for his mother and grandfather, arriving a few days before his mother received the notice to vacate. At appellee's request he took him to visit his daughter Ellen and was to return in a few hours to bring appellee home. Appellee's testimony was that Vern did not come back to get him and he thought appellant and "the boys" wanted to get rid of him. But Vern testified he called Ellen on the telephone and she advised him not to return because his grandfather wanted to spend a few days with her. Being unable to foresee the effect of his grandfather's spending a few days with Ellen while the construction work on the house was going on, he continued working on the house and a few days later his mother received the letter ordering her to move. Shortly thereafter appellee filed this action.

In her testimony Ellen denied that Vern had called but did admit that after appellee spent about a week with them her husband took appellee to the lawyer's office to have the letter written to tell Orba to get out of the house. This was acrimonious family litigation, and the trial lasted several days with the testimony in sharp dispute. However, it would serve no useful purpose to elaborate further on the evidence for although the chancellor held appellee's evidence preponderated this is not sufficient under our cases. We find the evidence did not rise to the required standard of clear, cogent and convincing and the deed should not have been cancelled. *Bryant* and *Baker,* supra.

The record having been fully developed the cause is remanded for entry of a decree not inconsistent with this opinion. Since we have reached this conclusion it is not necessary to discuss other allegations of error.

Reversed and remanded.

We agree. HARRIS, C.J., and FOGLEMAN and HICKMAN, JJ.

**Supplemental Opinion on Denial of Rehearing**
**delivered April 4, 1977**
**(In Banc)**

ELSIJANE T. ROY, Justice. Amplifying the opinion previously rendered in this case, we examine the complaint in more detail. It alleged no mental incapacity on appellee's part at the time of execution of the deed, nor was there any allegation of fraud on the part of appellant in securing the deed.

The only ground for cancellation stated in the complaint was failure of consideration, and the only relief requested was a complete cancellation of the deed. The plaintiff prayed that the deed "be cancelled and title to the land described therein be revested in plaintiff." Thus the issue here is not the same as in an action for rescission or reformation of a contract.

Appellant, after receiving and recording the Arkansas deed, returned to Illinois, sold her home, paid all moving expenses in returning to Arkansas and invested the money from the equity in her Illinois home in the house located on the Arkansas property. Under these circumstances it is impossible to restore appellant to her original position, and no offer of restitution was made by appellee. It requires evidence which is clear, cogent and convincing to set aside a deed for alleged failure to care for appellant under these facts.

We cited in our original opinion *Bryant* v. *Bryant,* 239 Ark. 61, 387 S.W. 2d 322 (1965). *Bryant* contained a number of supporting cases including *Kirkham* v. *Malone,* 232 Ark. 390, 336 S.W. 2d 46 (1960), wherein we stated:

At the outset it must be recognized that the law is firmly established that to justify the setting aside of a deed for failure of consideration, the evidence of such failure must be clear, cogent and convincing. (Citing cases.)

The dissenting opinion cites *Woolf* v. *Madison,* 250 Ark. 114, 464 S.W. 2d 74 (1971), as being contra to our position on the weight of evidence necessary to cancel the deed in this case. We do not find *Woolf* appropos since the trial court refused to cancel the deed and in affirming this Court said "the evidence preponderately" shows *grantee* abided by the

agreement. We do not find this to be support for the position that grantor would be entitled to have cancellation of the deed by a mere preponderance of the evidence.

In *Edwards* v. *Locke*, 134 Ark. 80, 203 S.W. 286 (1918), (another case cited in the dissent) the grantor-appellee in the complaint alleged *inter alia* that she was illiterate and did not understand the contents of the deed and that it had been executed through fraud, misrepresentation, intimidation and duress. She sought cancellation of the contract, the deed and a mortgage which was secured by the land in controversy.

The trial court construed the deed and the written contract together and found both should be cancelled not only because the consideration had failed, but also because appell nt had practiced fraud and deceit upon appellee in securing the deed. On appeal we affirmed.

This factual situation is clearly distinguishable from the case at bar, and we reaffirm our position that the facts here necessitated a showing by clear, cogent and convincing evidence that appellant had failed to care for appellee before the deed could be cancelled.

Byrd, J., dissents.

Conley Byrd, Justice, dissenting. I disagree with the majority's assertion that it takes clear, cogent and convincing evidence to prove a breach of contract of support when that is the consideration for a deed. While it admittedly takes clear, cogent and convincing evidence to refute the recitation of the consideration and to show that the actual consideration was the support of the grantor, *Woolf* v. *Madison,* 250 Ark. 114, 464 S.W. 2d 74 (1971), when that burden has been surmounted, the issue of performance or breach should then be considered in the same context of any other contract whether oral or written. Appellee here clearly sustained the burden of showing the true consideration for the deed — both parties acknowledged that support of the grantor was the consideration but differed as to whether appellee had performed her agreement.

The rationale for cancellation of a deed for support is set forth in *Edwards* v. *Locke,* 134 Ark. 80, 203 S.W. 286 (1918), as follows:

"This court is committed to the doctrine, which is supported by the great weight of authority, as announced in 4 R.C.L. p. 509, sec. 22, that: 'Where a grantor conveys land, and the consideration is an agreement by the grantee to support, maintain, and care for the grantor during the remainder of her or his natural life, and the grantee neglects or refuses to comply with the contract, that the grantor may, in equity, have a decree rescinding the contract and setting aside the deed and reinvesting the grantor with the title to the real estate.' *Salyers* v. *Smith,* 67 Ark. 526-531; *Priest* v. *Murphy,* 103 Ark. 464; *Whittaker* v. *Trammell,* 86 Ark. 25.

The rationale of the doctrine is that an intentional failure upon the part of the grantee to perform the contract to support, where that is the consideration for a deed, raises the presumption of such fraudulent intention from the inception of the contract and, therefore, vitiates the deed based upon such consideration. Such contracts are in a class peculiar to themselves, and where the grantee intentionally fails to perform the contract, the remedy by cancellation, as for fraud, may be resorted to regardless of any remedy that the grantor may have had also at law."

In so holding, this Court there took the view that only a preponderance of the evidence was necessary to show a breach and that a formal tender of the restoration of benefits received was not applicable to support cases.

For the reasons stated, I respectfully dissent.